MELODY A. KRAMER, SBN 169984
KRAMER LAW OFFICE, INC.
9930 Mesa Rim Road, Suite 1600
San Diego, California 92121
Telephone (858) 362-3150

J. MICHAEL KALER, SBN 158296
KALER LAW OFFICES
9930 Mesa Rim Road, Suite 200
San Diego, California 92121
Telephone (858) 362-3151

Attorneys for Plaintiff JENS ERIK SORENSEN,
as Trustee of SORENSEN RESEARCH AND
DEVELOPMENT TRUST

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,<br><br>            Plaintiff<br>   v.<br><br>AMPRO TOOLS CORPORATION, a California Corporation; and DOES 1 – 100,<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. C08-000096 CW (WDB)<br><br>**PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT AMPRO TOOLS CORPORATION**<br><br>Date:  October 29, 2008<br>Time:  1:30 p.m.<br>Magistrate Judge Wayne D. Brazil<br>Courtroom 4, 3rd Floor<br>1301 Clay Street, Ste 400 S<br>Oakland, CA 94612 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................3

FACTUAL SUMMARY ....................................................................................5

ARGUMENT ....................................................................................................6

I.    DEFAULT IS APPROPRIATE AFTER CONSIDERING THE
      FACTORS SET FORTH IN *EITEL V. McCOOL.* .............................6

      A.    Prejudice to the Plaintiff ......................................................6

      B.    Merits of Plaintiff's Substantive Claim ..................................7

      C.    Sufficiency of the Complaint ...................................................9

      D.    Sum of Money at Stake in the Action .....................................9

      E.    Dispute Concerning Material Facts .......................................10

      F.    Default Was Not Due to Excusable Neglect ..........................11

      G.    The Policy Favoring Decisions on the Merits Is Not
            Implicated...........................................................................14

II.   PLAINTIFF IS ENTITLED TO DAMAGES IN THE FORM OF A
      REASONABLE ROYALTY RATE WHERE DAMAGES ARE
      SOUGHT THROUGH DEFAULT JUDGMENT ...........................15

III.  A REASONABLE ROYALTY OF EIGHT PERCENT OF GROSS
      SALES SHOULD BE AWARED...................................................16

VI.   PLAINTIFF SHOULD ALSO BE AWARDED PREJUDGMENT
      INTEREST AND COSTS.............................................................20

CONCLUSION ..............................................................................................20

1

**TABLE OF AUTHORITIES**

2

3

<u>Cases</u>

4

*Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555,
5
563 (1931).................................................................................................18

6
*Bangor Punta Operations v. Universal Marine Company*, 543 F.2d
1107, 1110-1111 (5th Cir. 1976) ...........................................................19

7
*Bic Corp. v. First Prominence Co.*, 2001 WL 1597983, at *3 (S.D.N.Y.
8
Dec. 10, 2001) ...................................................................................17, 21

*Borg-Warner Corporation v. York-Shipley, Inc.*, 293 F.2d 88, 95 (7th
9
Cir. 1961).................................................................................................19

10
*Cequent Trailer Prods., Inc. v. Intradin (Shanghai) Machinery Co.*,
2007 WL 438140, at *8 (N.D. Ohio Feb. 7, 2007) ................................20

11
*Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) ...........................................5

12
*Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1574
(Fed. Cir. 1988) ......................................................................................16

13
*Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977)........15

14
*General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 103 S.Ct. 2058
(1983)......................................................................................................22

15
*Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F.Supp.
1116, 1120 (S.D.N.Y. 1970)...................................................................20

16
*Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir.
17
1983) .......................................................................................................16

18
*Iowa State Univ. Research Foundation, Inc. v. Greater Continents Inc.*,
81 Fed. Appx. 344, 2003 WL 22671574, at *1 (Fed. Cir. 2003)........13

19
*Kowalski v. East Asia Fish Co.*, 2008 WL 743814, at *3-4 (D.Hawai'i
20
March 11, 2008).....................................................................................17

21
*Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir.
1983) .......................................................................................................18

22
*M.H. Segan Ltd. Partnership v. Trendmasters, Inc.*, 2003 WL 1563768,
at *1 (S.D.N.Y. Mar. 25, 2003)..............................................................17

23
*Mahurkar v. C.R.Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996) ..............16

24
*Mobil Oil Corp. v. Amoco Chems. Corp.*, 915 F. Supp. 1333, 1353
(D.Del. 1994) ..........................................................................................21

25
*Pearle Vision, Inc. v. Star Vision Centers,* 2008 WL 2329196, at *3
26
(S.D.Ala. June 3, 2008)..........................................................................19

*Ramada Inns, Inc. [v. Gadsden Motel Co.]*, 804 F.2d [1562,] 1565 (11th
27
Cir. 1986)................................................................................................19

28
*Rates Technology Inc. v. Redfish Telemetrix, Inc.*, 2001 WL 1825854, at

*4-5 (E.D.N.Y. Dec. 20, 2001) ....................................................................19

*Rhino Assocs. v. Berg Mfg. & Sales Corp.*, 531 F. Supp.2d 652, 657-58
    (M.D.Pa. 2007) .................................................................................. 17, 21

*Riles v. Shell Exploration & Production Co.*, 298 F.3d 1302, 1313 (Fed.
    Cir. 2002) ...................................................................................................20

*Sensonics, Inc. v. Aerosinc Corp.*, 81 F.3d 1566, 1572 (Fed. Cir. 1996) .....................18

*SmithKline Diagostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1168
    (Fed. Cir. 1991) ........................................................................................20

*TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).........................15

*Trell v. Marlee Electronics Corp.*, 912 F.2d 1443, 1445 (Fed. Cir. 1990) ..................16

*U.S. Philips Corp. v. KXD Tech., Inc.*, 2007 WL 4984150, at *1
    (C.D.Cal. Sept. 7, 2007)...........................................................................17

*Variable-Parameter Fixture Development Corp. v. Morpheus Lights,
    Inc.*, 1997 WL 177886, at *1-2 (S.D.N.Y. April 14, 1997) .................17

## Statutes

35 U.S.C. § 271 ...............................................................................................9
35 U.S.C. § 284 .............................................................................................15
35 U.S.C. § 285 ...............................................................................................9
35 U.S.C. § 295 ...............................................................................................8

## Rules

Fed.R.Civ.P. Rule 55(b)...................................................................................5

Case No. C 08-00096 CW (WDB)

PLAINTIFF Jens Erik Sorensen, as Trustee of Sorensen Research and Development Trust ("SRDT") hereby requests the Court to enter judgment by default as to Defendant AmPro Tools Corporation ("AmPro") pursuant to Fed.R.Civ.P. Rule 55(b).

## FACTUAL SUMMARY

On January 15, 2008, the registered agent for service of process for AmPro was personally served with the summons and complaint in this matter (Docket # 10). AmPro has failed to answer or otherwise appear in this case, and its default was entered by the Court Clerk on March 26, 2008.

On May 2, 2008, the Court vacated the hearing on default judgment, requesting additional briefing and information before considering a default. Specifically, the Court stated:

> Plaintiff's motion must address, without limitation, (1) whether it is appropriate to enter default judgment under the factors set forth in *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986), (2) the amount of damages plaintiff seeks and the legal authorities that support plaintiff's contention that he is entitled to damages in the form of a reasonable royalty rate where the damages are sought as a matter of default, (3) argument and authorities supporting plaintiff's proposed method of calculating a reasonable royalty rate where defendant has not appeared and plaintiff may not have evidence establishing defendant's gross sales, and (4) evidence supporting the amount of damages requested.

Order of May 2, 2008 (Docket #21), pp. 1:26-2:6.

In the Complaint, Plaintiff requested damages of at least eight percent (8%) of gross sales as a reasonable royalty for all sales of Accused Products and according to proof at trial. The best evidence available as to sales of the products in question is $400,000, and Plaintiff has received eight percent royalties in the past. Therefore, the requested reasonable royalty in this case is $32,000.00.

Defendant was served with Plaintiff's first motion for default judgment, but

has never responded in any manner (see Docket Report generally), and has never contacted Plaintiff or its counsel regarding said motion. *Kramer Decl.* ¶ 4

**ARGUMENT**

I.    DEFAULT IS APPROPRIATE AFTER CONSIDERING THE FACTORS SET FORTH IN *EITEL V. McCOOL.*

In the case of *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986), the Ninth Circuit articulated the following "factors which may be considered by courts in exercising discretion as to the entry of a default judgment:"

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id*. at 1471-2.

In accordance with the Court's instructions, Plaintiff has analyzed the *Eitel* factors in light of the facts at bar. All seven factors in *Eitel* support proceeding to default judgment in the present case.

A.    Prejudice to the Plaintiff

This lawsuit is Plaintiff's sole means of recourse against AmPro. If the Court does not enter default judgment in this case, Plaintiff will suffer the extreme prejudice of being unable to recover damages from AmPro for its infringement of the subject patent.

Plaintiff cannot force AmPro to cooperate in reaching a substantive decision in this case. AmPro's consistent failure to file any sort of responsive pleading to the complaint indicates that it has no intention of contesting the allegations made in this lawsuit, much less participating in any meaningful fashion. If the Court refuses to

1    enter default judgment, Plaintiff will be severely prejudiced because AmPro's
2    unwillingness to either obtain a license or contest infringement will have the effect
3    of denying Plaintiff a remedy it is entitled to at law.

4

5        B.    Merits of Plaintiff's Substantive Claim

6        This is a case of patent infringement involving U.S. Patent No. 4,935,184
7    ("the '184 patent"). Plaintiff Sorensen Research & Development Trust is the owner
8    of the '184 patent. *Kramer Decl.* ¶ 5.

9        The '184 patent discloses an invention for injection molding of plastic
10    products. In particular, the '184 patent provides a solution to the pervasive problem
11    of mold stabilization in the injection molding of hollow plastic products. The highly
12    pressurized injection of molten plastic into a mold forces the mold parts to move
13    relative to each other. This movement causes misalignment of the mold parts and
14    results in products with walls of undesirable dimensional variations if not
15    adequately controlled. The '184 patented method provides an improved method for
16    reducing mold misalignment during the injection molding process where the plastic
17    product is made with two or more plastic injections. *Kramer Decl.* ¶ 6.

18        The '184 patent teaches a method to stabilize the core during the second or
19    later plastic injection by molding one or more stabilizing regions into the first plastic
20    material component(s) that impede relative movement of the mold parts during the
21    second or later injection. By providing this additional stabilization of the mold parts
22    against movement during the injection process, hollow products may be produced
23    having more controlled dimensions. Use of the '184 process offers significant
24    benefit in the manufacture of two-plastic housings and similar products. *Kramer
25    Decl.* ¶ 7

26        Defendant AmPro Tools Corporation ("AmPro") manufactures, imports,
27    and/or sells tools within the United States. The following three tools are the subject
28    of this patent infringement lawsuit:

7.

&#10148; Metrix Lighted Tape Measure with Level

&#10148; AmPro 25' Lighted Tape Measure, T25500

&#10148; AmPro 7.5M Lighted Tape Measure, T25502

These tape measures are housed in a hollow, two-layer plastic shell or casing. *Kramer Decl.* ¶ 8.

Through destructive testing, Plaintiff's experts have determined that there is a substantial likelihood, under 35 U.S.C. § 295, that the external housings used on these products are manufactured utilizing the '184 patented process for injection molding of a plastic product. An exemplar drawing and claim chart prepared by Plaintiff that illustrate how the process utilized to produce the housings for the Accused Products incorporate each element of the '184 patent claims are attached to *Kramer Decl.* ¶ 9 as Exhibit B and C.

Defendant AmPro was provided directly and via its supplier with notices of infringement, copies of the '184 patent, drawings and claim charts and was requested and invited to show any errors in Plaintiff's analysis. It never provided any admissible evidence to refute Plaintiff's conclusions of infringement. *Kramer Decl.* ¶ 10.

Plaintiff has had significant commercial success in licensing the '184 patent. Companies that have acquired a license include such well-known names as Hewlett-Packard, Microsoft, 3M Company, BMW, DaimlerChrysler, Mercedes Benz, Hitachi Maxell, Newell Rubbermaid, Philips Electronics, Amer Sports, Atomic Ski, Adidas-Solomon, Nordica, Tecnica, Head, Rossignol, Thales, Garmin International, Robert Bosch, Fluke, Skil, Irwin Tools, Dremel, Strait-Line, Chicony Electronics, Stanley Tools, Milwaukee Tools, Welch Allyn, ACCO Brands, Collins & Aikman, Textron, Griffin Marketing, IHL Corp., SL Corp., Stanley Electric, and many others. *Kramer Decl.* ¶ 11.

By contrast to the listed licensees, AmPro has elected to sell products manufactured utilizing the '184 patented process without obtaining a license and

1    without even presenting any argument, much less evidence, to contradict the expert

2    analysis showing a substantial likelihood of infringement.    AmPro's continued

3    knowing and deliberate infringement of the '184 patent after receiving notice and

4    without authorization or license violates 35 U.S.C. § 271 and 35 U.S.C. § 285.

5        Plaintiff has stated a meritorious claim for patent infringement and, given

6    AmPro's consistent failure to defend this action, Plaintiff is entitled to the requested

7    default judgment.

8

9        C.    Sufficiency of the Complaint

10    The Complaint filed by Plaintiff fully states a claim for relief for infringement

11    of a process patent, and demands damages in keeping with the licensing standards of

12    the patentee with regard to other licenses for the '184 patent.  Docket # 1, generally.

13        Paragraphs 1-4 identify the parties, including AmPro.  Paragraphs 5-7 set

14    forth the basis for jurisdiction and venue.  Paragraph 9 describes the subject patent

15    and a copy is attached to the Complaint as Exhibit A.  Paragraph 10 specifically

16    identifies three products that are made, imported, sold and/or offered for sale by

17    Defendants in the United States.

18        Paragraph 11 alleges the lack of a license or authorization for Ampro's

19    activities.  Paragraphs 14 and 15 set forth the dates of constructive and actual

20    knowledge of the patent by Ampro.  Paragraphs 16-25 set forth factual details about

21    the notification of patent infringement made by Plaintiff to Ampro and its affiliated

22    company, as well as Plaintiffs requests for manufacturing process information.

23        Paragraphs 30 and 31 state what damages should be.  The Prayer for Relief

24    details determination of infringement in its varying forms, and details the damages

25    requests.

26

27        D.    Sum of Money at Stake in the Action

28    As explained in more detail in the Declaration of Melody Kramer, the amount

of damages for which Defendant AmPro is liable is $32,000.   Plaintiff requests that judgment in the amount of $32,000 in damages be entered against AmPro, plus an award of prejudgment interest and costs.   Unlike the plaintiff in *Eitel* who sought almost $3 million in damages, the sum of money at stake in this matter is far less and, thus, does not warrant denial of the requested default judgment.

### E.    Dispute Concerning Material Facts

Despite having been served with the Complaint approximately six months ago and being aware of the entry of default and Plaintiff's first motion for default judgment, AmPro has never notified the Court of any dispute regarding the facts in this matter (see Docket Report, generally).

Plaintiff, however, is under an obligation to advise the Court of the following exchange of telephone calls and emails.   Between March 20 and March 24, 2008, counsel for Plaintiff, Melody Kramer, and Washington state counsel for AmPro, Bruce Kaser, engaged in a series of oral and written conversations.   Mr. Kaser acknowledged service of the complaint and filing of the motion for default.   Mr. Kaser asked that Plaintiff withdraw its motion for default so that AmPro could file its answer.   Ms. Kramer declined to withdraw the motion for default, and advised Mr. Kaser that AmPro need only file its answer to moot the pending default motion. Mr. Kaser responded by again asking for a withdrawal of the default motion, and then stated as follows:  "However, should you be asked by a judge, I want you to be aware that AmPro California has an intent to defend, if we can't get this matter settled."  Ms. Kramer responded as follows:

> I am not going to try this case via email.  The proper way for a party to indicate that it intends to defend a lawsuit is by filing an answer. Your client was served over two months ago, yet has still failed to file an answer.  Futhermore, the way to settle a lawsuit is to make an offer that meets the minimum threshold for reasonable consideration by the other side.  As we discussed on the phone, your client has not yet done

1    that either.

2    See *Kramer Decl.* ¶ 12 and Exhibit A to *Kramer Decl.*. Mr. Kaser represented that

3    the dollar amount of sales for the accused products were $400,000. A small

4    settlement was offered by Ampro, but Plaintiff declined. There have been no further

5    communications between the parties since that time, other than Plaintiff's service on

6    AmPro's counsel of the Motion for Default Judgment (Docket #19 and 20) and

7    Order Re Motion For Default Judgment on AmPro dated May 2, 2008 (Docket #21).

8    *Kramer Decl.* ¶ 13.

9          Plaintiff refused to be lulled into complacency by Mr. Kaser's representations

10   of "an intent to defend." If there were truly such an intent, AmPro would have filed

11   an answer, or some other responsive pleading, long ago. Eight months have passed

12   since the complaint was served, and AmPro has never followed through on Mr.

13   Kaser's assertion of an intent to defend this lawsuit. Nor have there been any

14   further discussions about settlement since Plaintiff declined AmPro's offer.

15         The summons attached to the complaint states in no uncertain terms that a

16   defendant has 20 days to answer the complaint, and that in the face of a failure to

17   answer, "judgment by default will be taken against you for the relief demanded in

18   the complaint." Plaintiff has waited well beyond the allotted twenty days. AmPro's

19   actions speak louder than its counsel's words.

20         The proper way to dispute allegations of a complaint is to file an answer.

21   AmPro has not done so. If AmPro possessed admissible exculpatory evidence, it

22   stands to reason that it would have filed an answer denying infringement. It also

23   follows that AmPro would not knowingly have allowed default to enter, and then

24   continue to remain silent and not act to set aside the default. It also follows that

25   AmPro would have objected to the first Motion for Default Judgment, but it did not.

26   AmPro's actions indicate that it does not possess admissible exculpatory evidence

27   and does not intend to defend this suit.

28

Case No. C 08-00096 CW (WDB)

F.     Default Was Not Due to Excusable Neglect

AmPro's default in this case was not due to excusable neglect. The parties have been in communication since December 17, 2007, when Plaintiff first notified AmPro of its infringement of the '184 patent.   Because Plaintiff's attempts to amicably resolve the matter failed, AmPro was properly served with a complaint on January 15, 2008.  Service was made on AmPro's agent for service of process, Celia Chu, at the offices of Ampro Tools Corporation, 1108 Elmsford Drive, Cupertino, CA 95014.   Ampro's attorney, Mr. Kaser, confirmed receipt of the summons and complaint, and knowledge of the request for entry of default before default had actually been entered.    AmPro cannot claim ignorance regarding Plaintiff's allegations of infringement or the existence of an entry of default.

The only excuse AmPro can muster is that it failed to timely inform its counsel about service of the complaint.  In the exchange of emails during March 20-24, 2008, Mr. Kaser, although aware that the complaint had been filed (in his email, he acknowledged receipt of a courtesy copy of the complaint), stated that he had not been told by AmPro that service had been effected until the week of March 17, 2008.  Notwithstanding the admonition on the front page of the summons regarding the 20-day deadline for answering a complaint, AmPro waited almost two months before  informing  counsel  about  service  of  the  complaint.    There  is  nothing excusable about AmPro's delinquent behavior.

In an apparent attempt to downplay AmPro's neglect of this suit, Mr. Kaser claimed that AmPro intended to defend when he talked to Ms. Kramer in March. Despite those assertions and the passage of another three and a half months, Ampro has done absolutely nothing to defend.  It has neither filed any pleadings with the Court nor had any informal contact with Plaintiff or its counsel.  Even if Ampro had any arguments for excusable neglect in the first few months after service of the complaint, any excuses evaporated upon acknowledging an impending entry of default and still not doing anything.

1      AmPro's neglect of the complaint after service and continuing neglect of this

2      suit after entry of default is inexcusable.

3          In *Iowa State Univ. Research Foundation, Inc.*, the Federal Circuit in a patent

4      infringement case upheld a trial court's entry of default judgment against a

5      defendant that was similarly "'blameworthy' and 'culpable' for its failure to file

6      responsive pleadings." *Iowa State Univ. Research Foundation, Inc. v. Greater*

7      *Continents Inc.*, 81 Fed. Appx. 344, 2003 WL 22671574, at *1 (Fed. Cir. 2003).

8      The trial court had found that the defendant "was aware of the action and

9      intentionally failed to participate in the case." *Id.* The original defendant had

10     answered the complaint, but later claimed to be a nonexistent corporation. The

11     court granted plaintiff leave to name the proper defendants and ordered those

12     defendants (collectively, "GCI") to file a responsive pleading by a date certain.

13     Having never responded to the complaint, GCI's only filings in the case were a

14     motion to set aside default and an opposition to plaintiff's motion for default

15     judgment. *Id.* The Federal Circuit found that GCI had knowingly and intentionally

16     failed to respond to the complaint within the prescribed time limits. Because GCI's

17     refusal to participate in the litigation appeared to be a strategic move to delay the

18     proceedings, and not mere oversight, the Federal Circuit held that entry of a default

19     judgment was justified. *Id.* at 3.

20         Likewise, AmPro's knowing and intentional refusal to respond to the

21     Complaint or participate in this suit in any way whatsoever is nothing more than a

22     strategic move to prevent this case from proceeding in an orderly fashion. AmPro's

23     inexcusable neglect of this case warrants entry of the requested default judgment.

24         The facts in the case at bar are very different from those in *Eitel*. In *Eitel*, the

25     court found that the defendant's failure to timely answer was due to excusable

26     neglect. The parties had engaged in settlement discussions after the filing and

27     service of the complaint. Apparently believing that the parties had reached an

28     agreement on settlement terms, including a release of all claims and dismissal of the

1   action, the defendant refrained from filing an answer.  The settlement agreement
2   dissolved and the plaintiff filed a motion for default judgment.  Seven days later, the
3   defendant filed an answer and counterclaim, even though beyond the 20-day period
4   for answering a complaint.  The court found that the defendant's failure to timely
5   answer was due to its reasonable reliance on the apparent settlement of the litigation.

6   This case is entirely different factually from the *Eitel* case.  AmPro's default
7   in this instance is not from any undue reliance on the state of settlement discussions.
8   Unlike the situation in *Eitel*, AmPro could not have believed that the parties had
9   reached an agreement on settlement terms.  Ms. Kramer advised Mr. Kaser in no
10  uncertain terms that the settlement offer was insufficient.  There have been no other
11  discussions regarding settlement since that time.   In fact, there have been no
12  discussions between the parties  whatsoever since that time. Furthermore, Ampro
13  was aware of the request for entry of default, was advised of the subsequent entry of
14  default, and was advised of Plaintiff's request for default judgment.   There is
15  nothing that would have led AmPro to believe that it did not need to answer.

16  Moreover, unlike in *Eitel* where the defendant promptly filed an answer after
17  default judgment was sought, AmPro has consistently failed and refused to file any
18  sort of responsive pleading to the complaint, even in the face of an entry of default
19  and, then again, in the face of a motion for default judgment.  AmPro's neglect of
20  this suit is in no manner excusable.  Rather, AmPro's status as a defaulted party is
21  the result of a knowing refusal on the part of AmPro to respond to the complaint.

22
23      G.      The Policy Favoring Decisions on the Merits Is Not Implicated.

24  The last of the *Eitel* factors is not implicated in this instance.  This is not a
25  situation where the defendant has sought relief from default, or cannot be found for
26  service.   In this instance, the defaulted party was properly served, has been in
27  communication with Plaintiff, has full knowledge of the entry of default, and was
28  served with a copy of the Court's Order of May 2, 2008 (Docket #21).  AmPro was

Case No. C 08-00096 CW (WDB)

1   also advised of Plaintiff's intent to file this renewed request for default judgment.

2   *Kramer Decl.* ¶ 14.   No response to that communication has been made either.

3   *Kramer Decl.* ¶ 15.

4          In such instance, where a defendant, like AmPro, refuses to participate in the

5   litigation, default is the only manner by which justice can be obtained.

6

7   II.    PLAINTIFF IS ENTITLED TO DAMAGES IN THE FORM OF A
          REASONABLE ROYALTY RATE WHERE DAMAGES ARE SOUGHT
8          THROUGH DEFAULT JUDGMENT

9          Upon default, the factual allegations of the complaint, except those relating to

10  the amount of damages, are taken as true.   *TeleVideo Sys., Inc. v. Heidenthal*, 826

11  F.2d 915, 917 (9th Cir. 1987) (citing *Geddes v. United Financial Group*, 559 F.2d

12  557, 560 (9th Cir. 1977)).   In a patent infringement case, damages are governed by

13  35 U.S.C. § 284.   Section 284 of the Patent Act provides:

14

15          Upon finding for the claimant the court shall award the claimant damages
           adequate to compensate for the infringement, but in no event less than a
16          reasonable royalty for the use made of the invention by the infringer, together
           with interests and costs as fixed by the court.
17

18  35 U.S.C. § 284.

19          "The two methods by which damages are usually calculated under § 284 are

20  assessment of actual damages (the profits the patentee lost due to the infringement)

21  or, if actual damages cannot be ascertained, determination of a reasonable royalty."

22  *Trell v. Marlee Electronics Corp.*, 912 F.2d 1443, 1445 (Fed. Cir. 1990).

23          Plaintiff is not a manufacturer of products and, therefore, damages based on

24  lost profits is not applicable.   Where actual damages cannot be ascertained, Section

25  284 requires that a reasonable royalty be determined.   *Hanson v. Alpine Valley Ski*

26  *Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983); *Trell*, 912 F.2d at 1445.   A

27  reasonable royalty is not merely a means of calculating damages, but is "the floor

28

Case No. C 08-00096 CW (WDB)

1    below which a damages award may not fall." *Fromson v. Western Litho Plate &*

2    *Supply Co.*, 853 F.2.d 1568, 1574 (Fed. Cir. 1988).

3        "The reasonable royalty may be based upon an established royalty, if there is

4    one, or if not upon a hypothetical royalty resulting from arm's length negotiations

5    between a willing licensor and a willing licensee." *Hanson*, 718 F.2d at 1078.

6    "Where an established royalty rate for the patented inventions is shown to exist, the

7    rate will usually be adopted as the best measure of reasonable and entire

8    compensation." *Id.*; *see also Mahurkar v. C.R.Bard, Inc.*, 79 F.3d 1572, 1579 (Fed.

9    Cir. 1996).

10        In assessing patent infringement damages in the context of a default

11   judgment, trial courts recognize that under Section 284 the patent holder, as

12   prevailing party, is entitled to no less than a reasonable royalty. *See, e.g., Kowalski*

13   *v. East Asia Fish Co.*, 2008 WL 743814, at *3-4 (D.Hawai'i March 11, 2008); *U.S.*

14   *Philips Corp. v. KXD Tech., Inc.*, 2007 WL 4984150, at *1 (C.D.Cal. Sept. 7, 2007);

15   *Variable-Parameter Fixture Development Corp. v. Morpheus Lights, Inc.*, 1997 WL

16   177886, at *1-2 (S.D.N.Y. April 14, 1997); *M.H. Segan Ltd. Partnership v.*

17   *Trendmasters, Inc.*, 2003 WL 1563768, at *1 (S.D.N.Y. Mar. 25, 2003).

18        Thus, even where damages are sought as a matter of default, trial courts

19   assess damages in the form of a reasonable royalty. *See, e.g., Kowalski*, 2008 WL

20   743814, at *3-4; *U.S. Philips Corp.*, 2007 WL 4984150, at *1; *Rhino Assocs. v.*

21   *Berg Mfg. & Sales Corp.*, 531 F. Supp.2d 652, 657-58 (M.D.Pa. 2007); *Bic Corp. v.*

22   *First Prominence Co.*, 2001 WL 1597983, at *3 (S.D.N.Y. Dec. 10, 2001);

23   *Variable-Parameter*, 1997 WL 177886, at *1. Accordingly, Plaintiff is entitled to

24   damages in the form of a reasonable royalty.

25

26   III.   A REASONABLE ROYALTY OF EIGHT PERCENT OF GROSS SALES
            SHOULD BE AWARED.

27        The Federal Circuit has noted that any uncertainty in the calculation of

28

16.

damages should be resolved against the infringing party. *Lam, Inc. v. Johns-Manville Corp.,* 718 F.2d 1056, 1065 (Fed. Cir. 1983); *Sensonics, Inc. v. Aerosinc Corp.*, 81 F.3d 1566, 1572 (Fed. Cir. 1996). "[W]hen the amount of the damages cannot be ascertained with precision, any doubts regarding the amount must be resolved against the infringer." *Lam,* 718 F.2d at 1065.

The Federal Circuit relied upon the Supreme Court decision in *Story Parchment Co.* in which the Court held that '[w]here the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts." *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931). "[T]he risk of the uncertainty should be thrown upon the wrongdoer instead of upon the injured party." *Id.*

Courts have applied this rule when awarding damages under a default judgment. In *Pearle Vision, Inc. v. Star Vision Centers, Inc.*, the court awarded monetary damages in a trademark infringement case where a default judgment was entered against a defendant who failed to appear and never participated in discovery. The court noted that the fact that damages were not susceptible to precise calculation was the fault of the infringer and resolved any doubts about the damages calculation against the infringer.

> The amount of defendant's profits or sales during the relevant time period cannot be precisely calculated since defendants have failed to appear in this action and, therefore, have not participated in discovery. However, as stated above, damages may be awarded even when they are not susceptible to precise calculations and any doubts about the actual amount of gross sales or profits should be resolved against the infringing party. **'The wrongdoer may not complain of inexactness where his actions preclude precise computation of the extent of the injury.'** *Ramada Inns, Inc. [v. Gadsden Motel Co.]*, 804 F.2d [1562,] 1565 [11th Cir. 1986] (citation omitted). **'[W]here the wrong**

**is of such a nature as to preclude exact ascertainment of the amount of damages, plaintiff may recover upon a showing of the extent of the damages as a matter of just and reasonable inference, although the result may be only an approximation.'** *Bangor Punta Operations v. Universal Marine Company*, 543 F.2d 1107, 1110-1111 (5th Cir. 1976) (citation omitted). **'It is sufficient if a reasonable basis of computation is afforded.'** *Borg-Warner Corporation v. York-Shipley, Inc.*, 293 F.2d 88, 95 (7th Cir. 1961).

*Pearle Vision, Inc. v. Star Vision Centers,* 2008 WL 2329196, at *3 (S.D.Ala. June 3, 2008) (emphasis added); *see also Rates Technology Inc. v. Redfish Telemetrix, Inc.*, 2001 WL 1825854, at *4-5 (E.D.N.Y. Dec. 20, 2001) (court refused to reward defendant for disregarding its duty to answer; even though plaintiff failed to present basis for determining reasonable royalty, court entered default judgment and awarded patentholder royalty damages based on settlement with other defendants).

Courts generally use the factors described in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970), *modified*, 446 F.2d 295 (2nd Cir.), *cert. denied*, 404 U.S. 870 (1971), when determining a reasonable royalty. *See, e.g., Cequent Trailer Prods., Inc. v. Intradin (Shanghai) Machinery Co.*, 2007 WL 438140, at *8 (N.D. Ohio Feb. 7, 2007). The *Georgia-Pacific* factors, which were approved by the Federal Circuit in *SmithKline Diagostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1168 (Fed. Cir. 1991), include, *inter alia*, royalties received by the patent holder for licensing the patent in suit, the patent holder's licensing policy, and the commercial relationship between the patent holder and the infringer. *Georgia-Pacific,* 318 F.Supp. at 1120.

A patentee's established licensing practice carries considerable weight in determining a reasonably royalty. *Riles v. Shell Exploration & Production Co.*, 298 F.3d 1302, 1313 (Fed. Cir. 2002). "Most frequently, royalties received by the patentee under prior and existing licenses for patented technology are the 'most influential factor' in determining a reasonable royalty." *Cequent Trailer Prods.,*

Case No. C 08-00096 CW (WDB)

2007 WL 438140, at *8 (citing *Mobil Oil Corp. v. Amoco Chems. Corp.*, 915 F. Supp. 1333, 1353 (D.Del. 1994). Thus, in determining damages after the defendant had consented to entry of default judgment, the court in *Cequent* based its calculation of a reasonably royalty on the patent holder's previous licensing charges for the patent in suit. *Id.* at *8-9.

The court in *Bic Corp.* utilized the same approach. As in the case at bar, the defendants in *Bic Corp.* were defaulted for failing to answer the complaint. In determining a reasonable royalty, the court considered the plaintiff's evidence of a settlement agreement with two other companies where the royalty rate was 3% of sales. Based upon this agreement, the court found that 3% of sales of the accused products was the established royalty and concluded that 3% was a reasonable rate for calculating damages. *Bic Corp. v. First Prominence Co.*, 2001 WL 1597983, at *3 (S.D.N.Y. Dec. 10, 2001). Similarly, in *Rhino*, the plaintiff offered evidence of an exclusive licensing agreement. The court determined that the royalty rate from that agreement of $5.00 per product was a reasonable royalty rate for calculating damages. *Rhino Assocs. v. Berg Mfg. & Sales Corp.*, 531 F. Supp.2d 652, 657-58 (M.D.Pa. 2007).

Plaintiff has previously received payment of 8 percent of gross revenues of accused products for licensing rights on the '184 patent. *Kramer Decl.* ¶ 16.

The best evidence available to Plaintiff and the Court as to the total amount of sales upon which a reasonable royalty should be calculated is $400,000. Eight percent of $400,000 is $32,000. *Kramer Decl.* ¶ 17.

AmPro cannot be heard to complain that the damages award is inexact, imprecise, or only an approximation. AmPro has made no effort to participate in this case, much less provide any discovery on damages. Because Plaintiff's other licensing and release agreements for the '184 patent provide a royalty payment of up to eight percent, an award of damages in the amount of $32,000 should enter in this case.

## VI.    PLAINTIFF SHOULD ALSO BE AWARDED PREJUDGMENT INTEREST AND COSTS.

"The standard governing the award of prejudgment interest under § 284 should be consistent with Congress' overriding purpose of affording patent owners complete compensation. In light of that purpose, we conclude that prejudgment interest should ordinarily be awarded. In the typical case an award of prejudgment interest is necessary to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement." *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 103 S.Ct. 2058 (1983).

Prejudgment interest should also be awarded from the date of initial contact with AmPro regarding infringement – December 17, 2007.  *Kramer Decl.* ¶ 18.

## CONCLUSION

For the reasons set forth above, default judgment should be entered against Defendant and in favor of Plaintiff in the amount of $32,000, plus prejudgment interest from December 17, 2007.


DATED this Friday, August 22, 2008.


JENS ERIK SORENSEN, as Trustee of
SORENSEN RESEARCH AND DEVELOPMENT
TRUST, Plaintiff

/s/ Melody A. Kramer

J. Michael Kaler, Esq.
Melody A. Kramer, Esq.
Attorneys for Plaintiff

Case No. C 08-00096 CW (WDB)

# PROOF OF SERVICE

I, Melody A. Kramer declare:  I am and was at the time of this service working within in the County of San Diego, California.  I am over the age of 18 year and not a party to the within action.  My business address is the Kramer Law Office, Inc., 9930 Mesa Rim Road, Suite 1600, San Diego, California, 92121.  I am a member of the State Bar of California and the Bar of this Court.

On Friday, August 22, 2008, I served on the parties to this action the following documents:

**PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT AMPRO TOOLS CORPORATION**

**DECLARATION OF MELODY A. KRAMER IN SUPPORT OF RENEWED MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT AMPRO TOOLS CORPORATION**

| PERSON(S) SERVED | PARTY(IES) SERVED | METHOD OF SERVICE |
|---|---|---|
| Celia Chu<br>1108 Elmsford Drive<br>Cupertino, CA 95014 | Agent for Service of Process for AmPro Tools Corporation | Federal Express |
| Bruce Kaser<br>Vantage Law PLLC<br>355 N.W. Gilman Blvd.<br>Suite 203<br>Issaquah, WA 98027 | Attorney for AmPro Tools Corporation<br>(no appearance made in this case; probably not authorized to appear in California courts) | Federal Express |

[X]   (Federal Express) I deposited or caused to be deposited today with Federal Express in a sealed envelope containing a true copy of the foregoing documents with fees fully prepaid addressed to the above noted addressee for overnight delivery.

I declare that the foregoing is true and correct, and that this declaration was executed on Friday, August 22, 2008, in San Diego, California.

/s/ Melody A. Kramer
_____
Melody A. Kramer

Case No. C 08-00096 CW (WDB)