MELODY A. KRAMER, SBN 169984
KRAMER LAW OFFICE, INC.
9930 Mesa Rim Road, Suite 1600
San Diego, California 92121
Telephone (858) 362-3150
mak@kramerlawip.com

J. MICHAEL KALER, SBN 158296
KALER LAW OFFICES
9930 Mesa Rim Road, Suite 200
San Diego, California 92121
Telephone (858) 362-3151
michael@kalerlaw.com

Attorneys for Plaintiff JENS ERIK SORENSEN,
as Trustee of SORENSEN RESEARCH AND
DEVELOPMENT TRUST

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,<br><br>Plaintiff<br><br>v.<br><br>AMPRO TOOLS CORPORATION, a California Corporation; and DOES 1 – 100,<br><br>Defendants. | Case No. C08-000096 CW (WDB)<br><br>**DECLARATION OF MELODY A. KRAMER IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT AMPRO TOOLS CORPORATION**<br><br>Date:  October 29, 2008<br>Time:  1:30 p.m.<br>Magistrate Judge Wayne D. Brazil<br>Courtroom 4, 3rd Floor<br>1301 Clay Street, Ste 400 S<br>Oakland, CA 94612 |

I, MELODY A. KRAMER, declare:

1. I am not a party to the present action. I am over the age of eighteen. I have personal knowledge of the facts contained within the following paragraphs, and could and would competently testify thereto if called as a witness in a court of law.

2. At all times relevant herein I have been an attorney for Defendant Sorensen Research and Development Trust ("SRDT"), Plaintiff in the above-captioned matter.

3. This Confidential Declaration is being submitted in conjunction with Plaintiff's Renewed Motion for Default Judgment Against Defendant AmPro Tools Corporation.

4. Defendant was served with Plaintiff's first motion for default judgment, but has never responded in any manner (see Docket Report generally), and has never contacted Plaintiff or its counsel regarding said motion.

5. This is a case of patent infringement involving U.S. Patent No. 4,935,184 ("the '184 patent"). Plaintiff Sorensen Research & Development Trust is the owner of the '184 patent.

6. The '184 patent discloses an invention for injection molding of plastic products. In particular, the '184 patent provides a solution to the pervasive problem of mold stabilization in the injection molding of hollow plastic products. The highly pressurized injection of molten plastic into a mold forces the mold parts to move relative to each other. This movement causes misalignment of the mold parts and results in products with walls of undesirable dimensional variations if not adequately controlled. The '184 patented method provides an improved method for reducing mold misalignment during the injection molding process where the plastic product is made with two or more plastic injections.

7. The '184 patent teaches a method to stabilize the core during the second or later plastic injection by molding one or more stabilizing regions into the first plastic material component(s) that impede relative movement of the mold parts

during the second or later injection.  By providing this additional stabilization of the mold parts against movement during the injection process, hollow products may be produced having more controlled dimensions.  Use of the '184 process offers significant benefit in the manufacture of two-plastic housings and similar products.

8. Defendant AmPro Tools Corporation ("AmPro") manufactures, imports, and/or sells tools within the United States. The following three tools are the subject of this patent infringement lawsuit:

- Metrix Lighted Tape Measure with Level
- AmPro 25' Lighted Tape Measure, T25500
- AmPro 7.5M Lighted Tape Measure, T25502

These tape measures are housed in a hollow, two-layer plastic shell or casing.

9. Through destructive testing, Plaintiff's experts have determined that there is a substantial likelihood, under 35 U.S.C. § 295, that the external housings used on these products are manufactured utilizing the '184 patented process for injection molding of a plastic product.  Attached as Exhibits B and C are drawings and claim charts prepared by Plaintiff that illustrate how the process utilized to produce the housings for the Accused Products incorporate each element of the '184 patent claims.

10. Defendant AmPro was provided directly and via its supplier with notices of infringement, copies of the '184 patent, drawings and claim charts and was requested and invited to show any errors in Plaintiff's analysis.  It never provided any admissible evidence to refute Plaintiff's conclusions of infringement.

11. Plaintiff has had significant commercial success in licensing the '184 patent. Companies that have acquired a license include such well-known names as Hewlett-Packard, Microsoft, 3M Company, BMW, DaimlerChrysler, Mercedes Benz, Hitachi Maxell, Newell Rubbermaid, Philips Electronics, Amer Sports, Atomic Ski, Adidas-Solomon, Nordica, Tecnica, Head, Rossignol, Thales, Garmin International, Robert Bosch, Fluke, Skil, Irwin Tools, Dremel, Strait-Line, Chicony

1  Electronics, Stanley Tools, Milwaukee Tools, Welch Allyn, ACCO Brands, Collins
2  & Aikman, Textron, Griffin Marketing, IHL Corp., SL Corp., Stanley Electric, and
3  many others.

4      12.   Despite having been served with the Complaint approximately six
5  months ago and being aware of the entry of default and Plaintiff's first motion for
6  default judgment, AmPro has never notified the Court of any dispute regarding the
7  facts in this matter (see Docket Report, generally).

8  Plaintiff, however, is under an obligation to advise the Court of the following
9  exchange of telephone calls and emails. Between March 20 and March 24, 2008,
10 counsel for Plaintiff, Melody Kramer, and Washington state counsel for AmPro,
11 Bruce Kaser, engaged in a series of oral and written conversations.  Mr. Kaser
12 acknowledged service of the complaint and filing of the motion for default.  Mr.
13 Kaser asked that Plaintiff withdraw its motion for default so that AmPro could file
14 its answer.  Ms. Kramer declined to withdraw the motion for default, and advised
15 Mr. Kaser that AmPro need only file its answer to moot the pending default motion.
16 Mr. Kaser responded by again asking for a withdrawal of the default motion, and
17 then stated as follows: "However, should you be asked by a judge, I want you to be
18 aware that AmPro California has an intent to defend, if we can't get this matter
19 settled." Ms. Kramer responded as follows:

> I am not going to try this case via email. The proper way for a party
> to indicate that it intends to defend a lawsuit is by filing an answer.
> Your client was served over two months ago, yet has still failed to file
> an answer. Futhermore, the way to settle a lawsuit is to make an offer
> that meets the minimum threshold for reasonable consideration by the
> other side. As we discussed on the phone, your client has not yet done
> that either.

Email correspondence between Ms. Kramer & Mr. Kaser attached herein as
Exhibit A.

13. Mr. Kaser represented that the dollar amount of sales for the accused products were $400,000. A small settlement was offered by Ampro, but Plaintiff declined. There have been no further communications between the parties since that time, other than Plaintiff's service on AmPro's counsel of the Motion for Default Judgment (Docket #19 and 20) and Order Re Motion For Default Judgment on AmPro dated May 2, 2008 (Docket #21).

14. AmPro was also advised of Plaintiff's intent to file this renewed request for default judgment.

15. No response to that communication has been made either.

16. Plaintiff has previously received payment of 8 percent of gross revenues of accused products for licensing rights on the '184 patent.

17. The best evidence available to Plaintiff and the Court as to the total amount of sales upon which a reasonable royalty should be calculated is $400,000. Eight percent of $400,000 is $32,000.

18. Prejudgment interest should also be awarded from the date of initial contact with AmPro regarding infringement – December 17, 2007.

SWORN TO under penalty of perjury of the laws of the State of California and the laws of the United States of America, this Friday, August 22, 2008.

/s/ Melody A. Kramer

Melody A. Kramer, Esq.
Attorney for Plaintiff
mak@kramerlawip.com

**EXHIBIT A**

**From:** "Bruce Kaser" <bruce@vantagelaw.net>
**To:** <mak@kramerlawip.com>
**CC:** <michael@kalerlaw.com>
**Subject:** RE: Sorensen vs. Ampro Tools Corporation
**Date:** Monday, March 24, 2008 10:16:24 AM

Thanks, Melody:

Your earlier email indicated that your evidence does not support my representations that the product in question had been discontinued before receipt of notice of infringement. I asked for this evidence in my earlier email. Please let me know what you have.

---

**From:** mak@kramerlawip.com [mailto:mak@kramerlawip.com]
**Sent:** Friday, March 21, 2008 8:55 AM
**To:** Bruce Kaser
**Cc:** michael@kalerlaw.com
**Subject:** RE: Sorensen vs. Ampro Tools Corporation

Dear Mr. Kaser:

I am not going to try this case via email. The proper way for a party to indicate that it intends to defend a lawsuit is by filing an answer. Your client was served over two months ago, yet has still failed to file an answer. Furthermore, the way to settle a lawsuit is to make an offer that meets the minimum threshold for reasonable consideration by the other side. As we discussed by phone, your client has not yet done that either.

Sincerely,

Melody A. Kramer

----- Original Message -----
From: "Bruce Kaser"
To: mak@kramerlawip.com
Subject: RE: Sorensen vs. Ampro Tools Corporation
Date: Thu, 20 Mar 2008 17:43:38 -0700

Thanks Melody,

I need to make a record of this, in case it has to be presented to a judge.

You sent a courtesy copy of the complaint to me when it was filed. I subsequently asked Ampro California to notify me if service had been effected and, for reasons presently unknown to me, the corporate agent who received the summons did not communicate that she had been served.

I think this would have come to light if your motion for default had been served on the corporate agent, or if a courtesy copy of the motion had been provided to me. As it was, I discovered the motion after reviewing court records after I was notified of the service by Ampro California this week. The facts are the facts, and Ampro California neglected to notify me of service of the complaint when service was effected. At this point in time, I have no explanation concerning why that was not done. However, should you be asked by a judge, I want you to be aware that Ampro California has an intent to defend, if we can't get this matter settled. The persons who are the principals of Ampro California are located in Asia.

I am asking you to withdraw your motion for default so that I may have time to enter an appearance and answer. I would like a reasonable time to accomplish these things because I just learned of the service and the motion for default. I am sorry for raising this again, but I need to create a record that I have made this request twice and I am hoping a judge will find the request to be reasonable under this particular set of circumstances.

I did advise you that sales of product were discontinued in advance of your notice of infringement. You indicate that your evidence does not support that representation. I do not believe your information is accurate. However, please produce your evidence so that I may investigate and/or respond. Specifically, I'm presuming that you did a prefiling investigation that involved the analysis of a product. I think I may have asked for details about that earlier  When was the product acquired, where, and what label did it bear?

If we can't get this settled quickly, which is my hope, and if I'm forced to answer, then I will want to raise the evidentiary issue with the court immediately.

I am not certain if you are the lead counsel or if it is Michael Kaler. I am copying him so that there is no confusion among the two of you, because I understand you have a large

number of complaints filed in the northern and other districts. I don't know if he or you, or both, primarily make the court appearances.

Thanks again.

---

**From:** mak@kramerlawip.com [mailto:mak@kramerlawip.com]
**Sent:** Thursday, March 20, 2008 12:56 PM
**To:** Bruce Kaser
**Subject:** Re: Sorensen vs. Ampro Tools Corporation

Dear Mr. Kaser:

This confirms that we did have a phone conversation this morning regarding the Sorensen v. Ampro case. To clarify, I declined to withdraw our request for default because Ampro has not yet filed an answer. As I advised you, if an answer is filed before default is entered, your request will become moot.

You have stated that the default request was made without notice. That is not correct. The summons that was served on Ampro specifically advised that if no answer was filed within 20 days, default would be entered. See the attached copy of the summons return executed.

You advised me in your phone call and also in your email that sales of the products that are the subject of this suit were discontinued in advance of our notice of infringement. Our evidence does not support that.

If your client has a serious intent to resolve this matter within the range of terms and documentation that we discussed this morning, I would be happy to wait before filing a request for default judgment until we have an opportunity to attempt resolution of this matter.

I look forward to speaking with you again after we have each had an opportunity to speak with our clients, and will look for an answer to be filed in the meantime.

Sincerely,

Melody A. Kramer

----- Original Message -----
From: "Bruce Kaser"
To: mak@kramerlawip.com
Subject: Sorensen vs. Ampro Tools Corporation
Date: Thu, 20 Mar 2008 12:29:43 -0700

Melody – this is a follow up to our conversation of this morning.

I have been asked to represent Ampro Tools Corporation, a California corporation ("Ampro California"). Ampro California was sued by Jens Erik Sorensen in the N.D. Cal. (Case No. C08 00096JL). You have an earlier letter from me in your file that involves a response I made to you on behalf of Frenway and Ampro California.

We had a discussion about resolving this matter this morning. I disclosed to you that Frenway is an overseas company that is the source of the products that your client has complained about. I disclosed that Ampro California is no longer active in the importation of products. I do understand that Ampro California handles certain business issues from time to time, although I lack details at this point. The products in question were discontinued for quite some time before notice of your client's patent rights was received.

Earlier this week, I was informed by Ampro California that its corporate agent had been served in the N.D. Cal. action. Upon reviewing the court files yesterday, I noted that you had filed a motion for default without giving notice. My client and myself had no prior knowledge of the motion for default until yesterday. There is no indication or certification in the court files involving a representation that notice was provided.

I called you today to discuss this matter, including the possibility of settlement. I asked you to withdraw the motion for default and you declined. By this email I will again ask you to withdraw the motion for default in order to give my client adequate time to enter an appearance or resolve this matter.

Please let me know if you will reconsider. Thank you.

Bruce A. Kaser

Vantage Law PLLC

355 NW Gilman Blvd, Suite 203

Issaquah, WA 98027

Direct: (425) 391-8741

Fax: (425) 391-8754

Melody A. Kramer

Kramer Law Office, Inc.

9930 Mesa Rim Road, Suite 1600

San Diego, CA 92121

858/362-3150 direct

858/824-9073 fax

This email and any attachments thereto is confidential and may be covered by attorney-client and/or work product privileges.  If you have i

Melody A. Kramer

Kramer Law Office, Inc.

9930 Mesa Rim Road, Suite 1600

San Diego, CA 92121

858/362-3150 direct

858/824-9073 fax

This email and any attachments thereto is confidential and may be covered by attorney-client and/or work product privileges.  If you have ina

# EXHIBIT B

# U.S. PATENT NO. 4,935,184
## Frenway Products Inc.
## Metrix Lighted Tape Measure with Level ("Accused Product")
## Claim Chart for Sorensen R&D Drawing No. D-5549

| CLAIM 1 -- '184 PATENT | REMARK | REM. NO. | REF. FIGURE |
|---|---|---|---|
| A method of cyclic injection molding a thin-walled hollow, plastic product | *The Accused Product is a thin-walled hollow, plastic product and has been molded by cyclic injection molding.* | 1 | Figs. 1 3 and 4 |
| having a closed end | *A closed end of the Accused Product is identified.* | 2 | Fig. 4 |
| and an open end | *An open end of the Accused Product is identified.* | 3 | Fig. 4 |
| with laminated walls | *Laminated walls (38) of the Accused Product are identified.* | 4 | Figs. 3 and 4 |
| terminating in a rim at the open end, | *Laminated walls (38) of the Accused Product terminate in an identified rim at the open end.* | 5 | Fig. 4 |
| utilizing a first mold cavity and | *The Accused Product is molded utilizing a first mold cavity.* | 6 | |
| a second mold cavity, | *The Accused Product is molded utilizing a second mold cavity (28).* | 7 | Fig. 4 |
| the first mold cavity being defined by a first common mold part and a first complementary mold part, | *The first mold cavity utilized in molding the Accused Product is formed of a first common mold part (10) and a first complementary mold part.* | 8 | |
| and the second mold cavity being defined by the first common mold part and a second complementary mold part | *The second mold cavity (28) utilized in molding the Accused Product is formed of a first common mold part (10) and a second complementary mold part (26).* | 9 | Fig. 4 |
| ///////////////////////////////////////////////// | | | |
| the method comprising the steps of | | | |

| CLAIM 1 -- '184 PATENT | REMARK | REM. NO. | REF. FIGURE |
|---|---|---|---|
| ///////////////////////////////////////////////// | | | |
| (a) combining the first common mold part with the first complementary mold part to assemble the first mold cavity; | *(a) The first common mold part (10) and the first complementary mold part are combined to assemble the first mold cavity.* | 11 | |
| (b) injecting a first plastic material into the first mold cavity; | *(b) A first plastic material (hard) is injected into the first mold cavity of the Accused Product.* | 12 | |
| (c) solidifying the injected first plastic material; | *(c) The injected first plastic material (hard) is solidified.* | 13 | |
| to form a first plastic material component | *The solidified first plastic material (hard) forms a first plastic material component (20) of the Accused Product.* | 14 | Figs. 3 and 4 |
| (d) combining the first common mold part with the second complementary mold part to assemble the second mold cavity | *(d) The first common mold part (10) and the second complementary mold part (26) are combined to assemble the second mold cavity (28) of the Accused Product.* | 15 | Fig. 4 |
| with the first plastic material component attached to the first common mold part so that when the second mold cavity is assembled | *The first plastic material component (20) of the Accused Product is attached to the first common mold part (10) during assembly of the second mold cavity (28).* | 16 | Fig. 4 |
| the first plastic material component is contained within the second mold cavity; | *The first plastic material component (20) of the Accused Product is contained within the second mold cavity (28).* | 17 | Fig. 4 |
| (e) injecting a second plastic material having different characteristics than the first plastic material into the second mold cavity | *(e) In production of the Accused Product, a second plastic material (soft) having different characteristics than the first plastic material (hard) is injected into the second mold cavity (28).* | 18 | Figs. 3 and 4 |
| while the first plastic material component is contained therein; and | *During injection of the second plastic material (soft), the first plastic material component (20) of the Accused Product is contained within the second mold cavity (28).* | 19 | Fig. 4 |

| CLAIM 1 -- '184 PATENT | REMARK | REM. NO. | REF. FIGURE |
|---|---|---|---|
| (f) solidifying the injected second plastic material so as to form a second plastic material component that fuses with the first plastic material component to produce a hollow plastic product; | *(f) After the second plastic material (soft) of the Accused Product is injected, it solidifies to form a second plastic material component (32) of the Accused Product.* | 20 | Figs. 3 and 4 |
| fuses with the first plastic material component to produce a hollow plastic product; | *The second plastic material component (32) fuses with the first plastic material component (20) to produce the Accused Product.* | 21 | Figs. 3 and 4 |
| wherein step (c) comprises the step of | | | |
| (g) shaping the first plastic material component such that when the first plastic material component is so contained in the second mold cavity the first plastic material component provides one or more stabilizing regions that rigidly secure the first common mold part in position in relation to the second complementary mold part | *(g) The first plastic material component (20) has one or more identified stabilizing region(s) (30), that rigidly secure the first common mold part (10), in position in relation to the second complementary mold part (26).* | 22 | Figs. 3 and 4 |
| in order to impede movement of the first common mold part in relation to the second complementary mold part during step (e), | *The identified stabilizing region(s) (30) of the first plastic material component (20) impede movement of the first common mold part (10) in relation to the second complementary mold part (26) that would otherwise result from the injection pressure of the second plastic material (soft) during injection into the second mold cavity (28).* | 23 | Figs. 3 and 4 |
| to thereby produce a thin-walled plastic product having controlled dimensions; | *The stabilization during the injection of the second plastic material (soft) allows the thin-walled plastic product, the Accused Product, to be produced with controlled dimensions.* | 24 | Figs. 1 3 and 4 |

| CLAIM 1 -- '184 PATENT | REMARK | REM. NO. | REF. FIGURE |
|---|---|---|---|
| wherein step (b) comprises the step of | | | |
| (h) injecting the first plastic material until it reaches the portion of the first mold cavity that defines the rim of the product; and | *The first plastic material (hard) of the Accused Product reaches a rim of the Accused Product.* | 25 | Fig. 4 |
| wherein step (e) comprises the step of | | | |
| (i) injecting the second plastic material until it reaches the portion of the second mold cavity that defines the rim of the product. | *The second plastic material (soft) of the Accused Product reaches a rim of the Accused Product.* | 26 | Fig. 4 |

Claim Chart for Sorensen R&D Drawing No. D-5549                                      4

**EXHIBIT C**

# METRIX LIGHTED TAPE MEASURE WITH LEVEL

FIG. 1

FIG. 3

FIG. 4
SECTION A-A

FIG. 2
(of '164 PATENT)

SRD TRUST

UNITED STATES PATENT NO. 4,935,184
METRIX LIGHTED TAPE MEASURE WITH LEVEL
PART NO. K60101

NOT TO SCALE

D-5540